Stanley Thomas WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 61662.

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 2, 1983.

Rehearing Denied March 16, 1983.

Robert T. Baskett, Dallas (court-appointed), for appellant.

Henry Wade, Dist. Atty. and W.T. Westmoreland, Jr., Winfield Scott and Mike Gillett, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ONION, P.J., and McCORMICK, J.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction for conspiracy to commit aggravated kidnapping. Punishment, enhanced by one prior conviction, was assessed at life. Appellant raises twenty-two grounds of error. Due to our disposition of his fourteenth ground of error, we find it unnecessary to address his other contentions.

Appellant argues that since the evidence shows that the appellant's only co-conspirator was feigning participation the evidence is insufficient to support a conspiracy conviction.

■ V.T.C.A., Penal Code, Section 15.-02(a), sets out the elements of a conspiracy. They are:

(1) a person

(2) with intent that a felony be committed

(3) *agrees* with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

(4) he or one or more of them performs an overt act in pursuance of the agreement.

Thus, one of the essential elements that must be proven is an agreement between the co-conspirators to commit the offense.

The corpus delicti of conspiracy must contain a showing of *agreement* to commit a crime. *Brown v. State,* 576 S.W.2d 36 (Tex. Cr.App.1979) (on rehearing). Black's Law Dictionary defines agreement as follows:

"A coming or knitting together of minds; . . . the coming together in accord of two minds on a given proposition; . . . a mutual assent to do a thing. . . ."

If an indictment alleges a conspiracy between only two individuals, but the evidence at trial shows that there was no actual, positive agreement to commit a crime, then the evidence is insufficient to support a conviction for conspiracy.

The evidence adduced at the trial of this cause shows that in June of 1977 Steve Jennings, appellant's alleged co-conspirator, was asked by Lt. David Golden of the Dallas Police Department to cultivate a friendship with appellant. Jennings was to report any suspicious activity to Lt. Golden. Around August 1, 1977, appellant asked Jennings if he was interested in making big money. Jennings replied affirmatively. During the next two weeks, appellant asked Jennings if kidnapping would bother him. When Jennings replied "no", appellant told Jennings he was setting up a kidnapping whereby a ransom of $100,000 would be paid and they would make a sixty-forty split of the ransom money. Through the month of August the plans for the kidnapping were formulated. The victim was to be the son of appellant's former employer. Appellant told Jennings his job was to stay with the boy until after the money was picked up. They were to keep the boy in a vacant apartment in the apartment building which appellant managed. Appellant told Jennings that after the ransom had been paid they would kill the boy and bury him in the river bottoms off Military Parkway. Other plans and preparations were made.

On Friday, September 16, 1977, two days before the kidnapping was to occur, Jennings contacted Lt. Golden and told him of the plans. Jennings was wired for sound by police officers and Jennings met with the appellant for further discussion of the

kidnapping. This conversation was recorded by the police. Jennings' telephone was also tapped and, at the police officers' request, he phoned appellant on Saturday and talked with appellant further about the kidnapping plan. Appellant was arrested later that day at his place of business.

At trial, Jennings testified that it was never his intention to go along with the kidnapping. Rather, he was involved merely to get information for Lt. Golden.

In *Woodworth v. State,* 20 Tex.App. 375 (1886), the defendant was charged with conspiring to commit burglary with intent to steal. At trial, defendant's sole co-conspirator testified that his only purpose in going along with the plan was to expose the defendant and in fact he did report the plan to the sheriff. This Court found that the transaction between the defendant and his alleged co-conspirator did not constitute a conspiracy in that the co-conspirator never intended to commit, or to assist in the commission of the burglary. He merely feigned his assent, and thus the evidence was insufficient to support the defendant's conviction for conspiracy.

"Our Penal Code defines the offense of conspiracy to be a positive agreement entered into between two or more persons to commit one of certain named offenses, burglary being one of the offenses named. (Penal Code, Arts. 800, 802, 804). An 'agreement', as defined by Webster, is 'the union of two or more minds in a thing done or to be done. A coming or knitting together of minds.' One of the definitions of the term given by Bouvier is: 'A coming together of parties in opin-ion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing.' Another definition quoted by the last named author is, that it 'consists of two persons being of the same mind, intention, or meaning, concerning the matter agreed upon.' (1 Bouv.Law Dic., title 'Agreement')" *Woodworth v. State,* supra at 381, 382.

See also: *Weathered v. State,* 128 Tex.Cr.R. 263, 81 S.W.2d 91 (1935); *Odneal v. State,* 117 Tex.Cr.R. 97, 34 S.W.2d 595 (1931).[1] For an analogous situation dealing with V.T.C.A., Penal Code, Section 71.02, see *Humphrey v. State,* 626 S.W.2d 816, 817 (Tex.App.—Corpus Christi, 1981), where the indictment charged the defendant with committing theft with intent to establish, maintain and participate in a "combination" with four other individuals. The court of appeals found the evidence insufficient to support the defendant's conviction because two of the five individuals involved were undercover agents carrying on "lawful activities", namely enforcing Texas state law.

■ In the case at bar, we find there was no meeting of the minds between the alleged co-conspirators. There was no criminal intent in the minds of both individuals. Thus, there could be no conspiracy.

■ The State argues that Section 15.02, supra, was written so as to adopt a unilateral approach and thus each individual's culpability should be determined without regard to the disposition of the other alleged co-conspirators. And to a certain extent, we agree.[2] However, the essence of the

---

1. Federal case law also supports such a conclusion: *United States v. Martino,* 648 F.2d 367, 405 (5th Cir.1981), cert. denied, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982); *United States v. Enstam,* 622 F.2d 857, 867 (5th Cir. 1980), cert. denied, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *United States v. Rose,* 590 F.2d 232 (7th Cir.1978), cert. denied, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); *United States v. Chase,* 372 F.2d 453 (4th Cir.1967), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626, and *Parrish v. United States,* 387 U.S. 913, 87 S.Ct. 1701, 18 L.Ed.2d 635 (1967); *Sears v. United States,* 343 F.2d 139 (5th Cir.1965).

2. We believe this is why the Legislature was so careful in its wording of Section 15.02(c), which provides:

"(c) It is no defense to prosecution for criminal conspiracy that:

"(1) one or more of the coconspirators is not criminally responsible for the object offense;

"(2) one or more of the coconspirators has been acquitted so long as two or more conspirators have not been acquitted;

"(3) one or more of the coconspirators has not been prosecuted or convicted, has been convicted of a different offense, or is immune from prosecution;

conspiracy statute is aimed directly at the increased danger to society presented by criminal combinations. *Brown v. State,* 576 S.W.2d 36 (Tex.Cr.App.1979) (on rehearing).

Because we have found the evidence insufficient to show an agreement as required by Section 15.02, the judgment is reversed and the cause is reformed to show an acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

"(4) the actor belongs to a class of persons that by definition of the object offense is legally incapable of committing the object offense in an individual capacity; or

"(5) the object offense was actually committed."